## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MLB PLAYERS INC.,<br><br>       *Plaintiff,*<br><br>  *v.*<br><br>DRAFTKINGS, INC., f/k/a DK CROWN HOLDINGS INC. and BET365 GROUP LIMITED,<br><br>       *Defendants,* | **CIVIL ACTION**<br><br><br>**NO. 24-4884-KSM** |

## JOINT RULE 26(f) REPORT

Following a fulsome discussion, as contemplated by Fed. R. Civ. P. 26(f), the Parties aver as follows:

**I.    Counsel**

    **A. Lead counsel for Plaintiff(s):** <u>Jeffrey Kessler (Winston & Strawn LLP)</u>

    **B. Lead counsel for Defendant(s):** <u>DraftKings: Megan K. Bannigan (Debevoise & Plimpton LLP)</u>

                                        <u>bet365: Art Zorio and Airina Rodrigues (Brownstein Hyatt Farber Schreck LLP)</u>

    **C. Counsel who participated in Rule 26(f) conference on behalf of Plaintiff(s):**

       <u>Jeffrey Kessler; David Greenspan; Diana Leiden; Robert Pannullo; Peter Leckman</u>

    **D. Counsel who participated in Rule 26(f) conference on behalf of Defendant(s):**

       <u>DraftKings:  Megan Bannigan; Jared Kagan; Jacob Hochberger; Barry Cohen</u>

       <u>bet365:  Airina Rodrigues; Arthur Zorio; Matthew McKissick; Darius Gambino</u>

## II.    Description of Claims and Defenses

**The Parties should assume that the Court has read the Complaint and is familiar with the claims.  However, the Court does not know all of the facts supporting those claims, nor the factual bases for the defenses.  Therefore, counsel shall summarize the primary facts and threshold legal issues.  <u>Counsel should not merely parrot their pleadings.</u>  In addition, the Parties should attach critical documents to this report for the Court to review, if not attached to the pleadings already (e.g., in a contract case, the document(s) comprising the contract; in a personal injury case, photographs of the scene, etc.).**

<u>**Plaintiff's Statement:**</u>

Plaintiff MLBPI is a subsidiary of the Major League Baseball Players Association ("MLBPA"), the union representing Major League and Minor League baseball players. MLBPI is the exclusive group licensing agent for all active MLB players and has the exclusive right to use, license, and sublicense all active MLB players' names, images, and likenesses ("NIL") for any commercial marketing, promotional activity, or product in which MLB players' group licensing rights are implicated. Defendants DraftKings and bet365 are sports gambling companies that operate online and mobile betting platforms.

Plaintiff alleges that Defendants knowingly and deliberately misappropriated, *inter alia*, the images and likenesses of hundreds of MLB players on their sportsbook betting platforms and associated advertising.

Both Defendants feature nearly every active MLB player's image on their sportsbook betting platforms, often stylistically paired with their team logo and team colors. DraftKings' sportsbook betting app (DraftKings Sportsbook) also maintains individual MLB player pages that feature large images of the player alongside a consolidated list of all bets pertaining to that player. Plaintiff contends that the use of player images is neither news nor necessary, especially within the context of sportsbook betting. Indeed, neither Defendant features player images for the National Football League and various other professional sports leagues, despite offering the same

scope and types of bets for each. Defendants' use of MLB player images on Defendants' sportsbook betting platforms is intended for a commercial (rather than informational) purpose—to capitalize on MLB players' personas and popularity in order to draw customers to the platforms. This commercial purpose is even more pronounced in Defendants' advertisements for these sportsbook betting platforms, which often include images of popular MLB players in posts that contain gambling advertising disclaimers and questions prompting viewers to answer in the form of placing a bet on Defendants' sportsbook platforms.

Based on these allegations, Plaintiff MLBPI asserts claims against DraftKings and bet365 for: (1) violations of Pennsylvania's right of publicity statute, 42 Pa. Const. Stat. § 8316; (2) violations of common law misappropriation of publicity; (3) violations of common law misappropriation of identity; and (4) unjust enrichment.

DraftKings and bet365 have asserted in separately filed (but substantially overlapping) motions to dismiss that their sports betting services are primarily "news reporting," akin to early-2000s providers of fantasy sports products, and therefore that their undisputed and widespread use of MLB player NIL is outweighed by First Amendment principles. *See generally* Dkts 34, 36.[1] Defendants rely on out-of-circuit cases, analyzing right-of-publicity statutes of other states, finding that the use of sports *statistics*—not betting lines set by each Defendant—was sufficiently "newsworthy" under specific state statutes following significant development of the fact record

---

[1] Defendants have also argued in their motions to dismiss that Plaintiff lacks standing to bring its claims under 42 PA. CONST. STAT. § 8316 and Pennsylvania common law. However, Plaintiff will argue in its opposition to Defendants' motions to dismiss that this is clearly untrue, as Section 8316 allows an entity authorized in writing to license the commercial or advertising uses of a person's name or likeness to bring suit under that statute, and common law similarly allows for the assignment of the commercial value of one's NIL. 42 PA. CONST. STAT. § 8316(b)(4). MLBPI is the exclusive group licensing agent for all active MLB players, who have explicitly and knowingly authorized MLBPI in writing to license their NIL in group licensing activities.

through discovery. *See, e.g.*, *C.B.C. Distrib. & Mktg., Inc. v. MLB Advanced Media, L.P.*, 505 F.3d 818, 823-24 (8th Cir. 2007) (affirming district court's finding, at the summary judgment stage, that fantasy baseball company's use of MLB player names and statistics trumped the players' Missouri right-of-publicity claim); *CBS Interactive Inc. v. NFL Players Ass'n, Inc*., 259 F.R.D. 398, 417-19 (D. Minn. 2009) (relying on *C.B.C.* and finding, at the summary judgment stage based on the "evidentiary record" and "pre-trial discovery," that use of player information in fantasy football game was protected by the First Amendment).

As Plaintiff will set forth in its opposition to Defendants' motions to dismiss on December 23, Defendants' use of player NIL in online sportsbook platforms—and their use of popular player images to drive traffic to their apps and also to specific bets—are far afield from the arguable "news reporting" nature of MLB player statistics, even if those out-of-circuit cases controlled here. Defendants are not news sources, but gambling operators, and sportsbook bets are not newsworthy pieces of information, but a product that Defendants are selling. Promoting "prop bets" or "same game parlays" with the unlicensed but valuable identities of MLB players is a far cry—in fact, the furthest cry—from selling a news story about an MLB player accompanied by a picture of the player. Consumers do not log-in to DraftKings or bet365 sportsbooks—unavailable in certain states, unavailable out-of-state, and unavailable to minors—to get news. Consumers log-in to place bets.

This makes it even more clear that Defendants' use of MLB player images in connection with their sportsbook betting platforms is commercial rather than informational. Further, a key (factual) inquiry in weighing right of publicity claims against the First Amendment is whether consumers could mistakenly believe that the players endorse the defendants' services. Plaintiff has alleged this in spades, and Defendants' use of popular MLB players (e.g., Shohei Ohtani) in

advertisements for its sportsbook betting apps—to drive traffic not only generally to their platforms but also to publicize specific bets—makes this starkly different from the fantasy sports cases. Defendants' rejoinder that their social media posts are merely "news reporting" as opposed to marketing is not credible on its face—and unlikely to be supported by the evidence Plaintiff will seek regarding Defendants' marketing strategies. Bona fide news stories do not feature gambling disclosures like Defendants' marketing materials do. There is no question that Plaintiff's claims require discovery and factual inquiries into Defendants' use of MLB (but not NFL or other sports) player NIL and their capitalization on the identities of specific popular baseball players to drive traffic to their platforms and to specific bets.

Finally, one of the key legal issues is which framework the Court should use to analyze Defendants' use of MLB player NIL—and that itself is a fact-intensive inquiry. As noted above, Defendants urge the Court to follow non-binding, out-of-circuit cases involving fantasy sports that are distinguishable factually and legally (particularly given that those cases analyzed right-of-publicity statutes of other states that are substantively different than Pennsylvania's). Further, the applicable legal framework depends on the nature of Defendants' use—also inherently a fact-based inquiry. The Third Circuit recently adopted the "transformative use" test for balancing right-of-publicity claims against concerns about freedom of expression—which Defendants entirely ignore in their motions to dismiss. *Hart v. Electronic Arts, Inc*., 717 F.3d 141 (3d Cir. 2013). Under that test, a new work is "transformative" only if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id*. at 159 (citation omitted). Further, Third Circuit precedent holds that commercial speech is entitled to less First Amendment protection than non-commercial speech—and that determination depends on whether the speech is an advertisement; whether it refers to a specific product or service; and

whether the speaker has an economic motivation. *Crash Proof Retirement, LLC v. Price*, 533 F. Supp. 3d 227, 230 (E.D. Pa. 2021) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983)). These are all fact-based determination that can only be made after discovery.

**<u>Defendant DraftKings' Statement:</u>**

Defendant DraftKings is a digital sports entertainment and gaming company that provides online sports betting, fantasy sports, and sports-related news and commentary.  DraftKings uses publicly available information, such as player names, statistics, news, and betting odds, as well as player images under copyright licenses,[2] to provide its newsworthy products and services. DraftKings operates the DraftKings Sportsbook ("DK Sportsbook"), an online, non-traditional source for consumers to learn about, engage with, and, if they choose, place bets on sports teams and athletes.

 In right of publicity cases challenging the use of an individual's NIL, whether a use falls under a statutory exception is frequently a threshold issue addressed at the pleading stage based on the nature of the content at issue.  Courts nationwide recognize that information about sports— whether standings, statistics, images, names, attributes, or fictional salaries based on statistics used for fantasy sports—is newsworthy and thus protected from right of publicity claims under statutory exceptions and the First Amendment.  The challenged content here— information about baseball— is no different.  The other analytical frameworks that MLBPI proffers miss the mark.  There can be no real dispute that the information DraftKings presents to users—which is accessible to anyone regardless of age, location, or the possession of login credentials—is identical to content on

---

[2]     DraftKings has been using player images in its paid Daily Fantasy Sports ("DFS") products for over a decade without a complaint, request for license, or legal action from MLBPI.

traditional news sites such as ESPN, Yahoo, CBS, NBC, or the Philadelphia Inquirer that is protected from right-of-publicity challenges.[3]

The presence of betting odds on DK Sportsbook or DraftKings' social media similarly does not alter the legal analysis. If content relating to betting odds were "the furthest cry" from news stories and was not newsworthy, traditional news sources would not feature betting odds on the top of the front pages of their websites, on their BottomLine chyrons, or prominently throughout World Series preview articles. *See, e.g.*, Dkts. 36-5–11. Yet that is precisely what modern sports media outlets do. Betting odds are as much a part of understanding baseball as traditional statistics such as hits, runs batted in, or wins and losses. In fact, betting odds account for an even wider swath of information relating to the likelihood of an outcome in a game or a season, and thus are relied upon by consumers—regardless of their interest in placing a bet—to understand what may or may not take place in a given game or season. That consumers can also place bets on DK Sportsbook does not alter the underlying nature of the challenged information.

This information is no different from statistics in game programs, game posters, parody baseball cards, and season-long and daily fantasy sports, all of which are sold for profit, and which, in cases past, were shielded as newsworthy from right of publicity claims. *See, e.g.*, *Daniels v. FanDuel, Inc. and DraftKings Inc.*, 909 F.3d 876 (7th Cir. 2018); *CBS Interactive Inc. v. NFL Players Ass'n, Inc.*, 259 F.R.D. 398 (D. Minn. 2009); *C.B.C. Distrib. & Mktg., Inc. v. MLB Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007) *Gionfriddo v. MLB*, 94 Cal. App. 4th 400 (2001); *Cardtoons, L.C. v. MLB Players Ass'n*, 95 F.3d 959 (10th Cir. 1996); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995). Different courts in different

---

[3]     DraftKings does not argue that its use of copyrighted photographs that it duly licensed is a transformative use, and so *Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013), is inapposite here. Indeed, MLBPI's state law claims are preempted by the Copyright Act, and provides another basis on which this case should be dismissed if it even makes it beyond the pleading stage.

jurisdictions, applying different (but similar) state laws have uniformly concluded that the *public interest* in the content determines its newsworthiness, and the public interest in baseball and betting odds related to baseball—as MLBPI concedes in the Complaint—means that information, images, betting odds, news, and updates related to baseball are newsworthy and protected from right of publicity suits.

The content DraftKings posts on its social media, which relates to baseball—a matter clearly in the public interest, which is the touchstone for the analysis—is similarly protected under the Statute. The sole DraftKings social media post MLBPI identifies in the Complaint provides a forum through which users can engage, like they would in various other protected fora of expression, with the author and other readers.

The First Amendment independently fully protects DraftKings' use of player images on DK Sportsbook and social media. The First Amendment analysis in right-of-publicity cases seeks to balance the economic interests implicated by the right of publicity—as pled in the Complaint— against the First Amendment rights at issue. Here, MLBPI merely contends that the players are entitled to their individual shares of a broader licensing fee that MLBPI would have received from DraftKings. But that allegation does not even implicate those right of publicity interests that were considered—and found to be insufficiently weighty to First Amendment considerations—in more fulsome analyses of the competing rights. *Cf. C.B.C.*, 505 F.3d at 824 (identifying the right to earn a living, incentivizing productive activity, and consumer protection from false advertising as economic interests, and "protecting natural rights, rewarding celebrity labors, and avoiding emotional harm" as nonmonetary interests protected by the state right-of-publicity statute). This cannot—nor has ever in similar cases—outweigh the weighty First Amendment considerations of promoting the dissemination, discussion, and exchange of information in the public interest. The

public is undoubtedly interested in the content here; the Instagram post at issue, for example, has nearly 2,500 'likes' on Instagram. Dkt. 1 at 16.

While the Complaint should be dismissed because of the newsworthiness and First Amendment considerations discussed above, it should independently be dismissed at this stage because it fails to meet the basic pleading requirements of a right-of-publicity claim under the Pennsylvania statute and common law. The Statute requires a plaintiff to satisfy three simple elements: (1) identify the "natural person" whose name or likeness is being used without authorization; (2) that the natural person's name or likeness has "commercial value," as defined by the statute; and (3) that the defendant did so without the written consent of the natural person or a (b) authorized party. 42 Pa. Cons. Stat. § 8316(a). MLBPI does not plead (1) or (2). In particular, MLBPI references "hundreds" of MLB players and claims that their "names, images, and likenesses have commercial value." Dkt. 1 ¶¶ 1, 44, 55. The Statute expressly defines "commercial value" as a "[v]aluable interest in a natural person's name or likeness that is developed through the investment of time, effort and money." 42 Pa. Cons. Stat. § 8316(e). MLBPI's conclusory Complaint fails to satisfy the standard, and thus the Complaint should be dismissed on this basis alone. As explained in DraftKings' motion, the Complaint also fails to adequately allege that MLB players assigned their rights in writing to MLBPI, as opposed to non-party MLBPA. Although MLBPI argues in a footnote above that it is "the exclusive group licensing agent for all active MLB players, who have explicitly and knowingly authorized MLBPI in writing to license their NIL in group licensing activities," that is not what the Complaint alleges. Rather, it alleges that MLBPI is a subsidiary of MLBPA, and that the players assigned their rights to MLBPA.[4]

---

[4]      In the event the Court does not dismiss MLBPI's Complaint, DraftKings plans to assert as affirmative defenses, among others, laches, acquiescence, and copyright preemption.

As discussed below, MLBPI's pleading failures have significant consequences for the scope of discovery. DraftKings intends to move the Court at the upcoming conference, pursuant to the Court's Policies and Procedures, for a stay of discovery while the dispositive motions remain pending. DraftKings understands that the Court will grant a stay of discovery only in extraordinary circumstances, and does not make its request lightly.

**<u>Defendant bet365's Statement:</u>**

All of the players of Major League Baseball have already lost the First Amendment argument in a substantially similar case to the one at bar, having been told in a binding decision that their rights of publicity are superseded by the First Amendment to the United States Constitution where producers of fantasy baseball games used players' likenesses. *C.B.C. Distribution & Marketing, Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 820, 823 (8th Cir. 2007) ("*C.B.C.*"). No one attribute is entitled to a different status under the right of publicity doctrine: a person's name, image, likeness, or any attribute alone or in combination is treated the same under the Pennsylvania Statute and the First Amendment. 42 PA. CONST. STAT. § 8316(e) ("Name" or "likeness" is defined in the statute as "[a]ny attribute of a natural person that serves to identify that natural person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice or a substantially similar imitation of one or more thereof."); *CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*, 259 F.R.D. 398 (D.Minn. 2009) (use of player images and statistics did not violate players' right of publicity based on First Amendment principles). Despite the *C.B.C.* binding ruling against all of the players concerning all of their rights of publicity, they have decided to assign their rights of publicity to yet another entity (Major League Baseball Players Association, which claims to have separately assigned the right to license to Plaintiff herein) and file the instant action. bet365

Group Limited ("bet365") provides factual information regarding Major League Baseball teams and players, information that is in the public domain and for which bet365 is entitled to First Amendment protection in publishing, just as C.B.C. Distribution & Marketing, Inc. was afforded.

bet365 offers free news to the public as a necessary, ancillary service to its sports betting platform and offers up-to-date statistics and information as part of its sports betting platform. Like traditional media outlets, bet365 includes identity attributes of the individuals involved in its news reports—here, MLB players—when informing the public about the sporting events that form the foundation of its business. Identity attributes of MLB players also serve an important informational purpose on bet365's sports betting platform by providing information and statistics about player performance. Images—as just one player attribute—also permit users to more readily and accurately identify players about whom users are seeking information. Because sports betting customers must be fully informed to decide whether to bet or abstain, bet365 publishes news updates, presentations and commentary about these newsworthy events. As such, news reporting and sports betting are inherently interconnected, and bet365's news reporting activities are a vital component of its overall business.

The crux of this case is the scope of First Amendment protection afforded to bet365's news reports—a purely legal question that is ripe for determination even at the pleading stage. No facts are needed for the Court to determine whether bet365's free news reports, as alleged in the Complaint, amount to commercial or noncommercial speech under the U.S. Supreme Court's three-part *Bolger* test. The nature of those news reports is readily apparent on the face of the communications themselves and as identified in the Complaint, and the Court is fully equipped to assess whether those communications are entitled to constitutional protection. If the Court finds that bet365's First Amendment interests outweigh MLBPI's purported right of publicity interests,

each of MLBPI's claims may be dismissed, making this threshold legal issue dispositive of the entire case.

Similarly, determining whether MLBPI has alleged facts necessary to support each of the elements of MLBPI's claim under Pennsylvania's right of publicity statute, 42 PA. CONST. STAT. § 8316, and whether bet365's news reporting activities fall under one or more of the exceptions outlined in Pennsylvania's statute, is solely a legal issue that is dispositive of MLBPI's statutory claim. Like the First Amendment issue described above, factual discovery is not necessary for the Court to determine the scope of Pennsylvania's statutory exceptions and whether bet365's communications meet those exceptions.

Regarding MLBPI's common law claims, the Court must necessarily determine whether those causes of action remain viable at all or if they were abrogated by the enactment of 42 PA. CONST. STAT. § 8316, as some federal courts in Pennsylvania have previously held. If the Court finds that the Commonwealth of Pennsylvania still recognizes common law causes of action for the misappropriation of publicity and the misappropriation of identity, bet365's news reporting activities are nonetheless still exempt from liability, as common law recognizes exceptions for the First Amendment, just like Pennsylvania's statutory analog.

As for MLBPI's claim for unjust enrichment, MLBPI has not adequately alleged that bet365 received a benefit from MLBPI that bet365 appreciated and retained under circumstances that would be inequitable without payment, which is fatal to MLBPI's equitable claim. Here, bet365 merely made use of the same publicly available information that is available to all and exercised its First Amendment rights to inform its readers. Because MLBPI did not confer a benefit on bet365 in the first place, MLBPI's equitable claim is meritless.

The issues involved in this case are questions of law that can be resolved on the face of MLBPI's pleading and do not necessitate fact discovery.  However, should the Court find that it may benefit from some fact gathering, bet365 intends to pursue discovery of information related to: (1) the commercial value of the identity of each and every MLB player that MLBPI purports to act for in this action; (2) the contracts among the players and Major League Baseball Players Association ("MLBPA") and the Plaintiff herein upon which Plaintiff bases its right to sue; (3) licensing agreements that MLBPI has entered into with third party sports betting or fantasy sports companies, or other news media companies; (4) the reasons why MLBPI is commencing this action only now, when many sports betting companies have used MLB player images for years; (5) any purported written assignment of rights from each MLB player (*i.e.*, each "natural person") to MLBPI; and (6) other contracts, licenses and agreements that MLBPI may have with respect to collective players' name, image and likeness rights, including with MLBPI's licensing representative, OneTeam.

bet365 has not filed an Answer in this matter because it moved to dismiss MLBPI's Complaint in its entirety. However, if this case is not dismissed, bet365 anticipates asserting denials to material claims made in the Complaint and affirmative defenses. bet365 has not completed its investigation of all applicable defenses, but believes a factual basis exists to assert the following:

- Failure to State a Claim because MLBPI's claims are barred by First Amendment Considerations and MLBPI will not be able to prove the elements of its asserted causes of action;

- Descriptive Fair Use of player attributes because bet365 uses player attributes to communicate factual and newsworthy information and statistics, and not for commercial or advertising purposes;

- Laches/Estoppel/Waiver because MLBPI has failed to previously enforce its alleged collective rights against any fantasy sports or sports betting operator and because the claims asserted in this litigation were previously litigated in other jurisdictions;

- MLBPI's right of publicity claims are preempted by the U.S. Copyright Act; and

- MLBPI's claims are barred because enforcement of Pennsylvania common and statutory right of publicity laws would discriminate against and unduly burden interstate commerce under Article I, Section 8, Clause 3 of the United States Constitution.

## III.    Anticipated Scope of Discovery

### A. Summarize with specificity those issues on which the Parties will need to conduct discovery.  Identify categories of information each Party needs in discovery and why.

**Plaintiff's Response:** Plaintiff will need to conduct discovery on at least the following issues:

i.    Defendants' internal communications and documents regarding their marketing and/or advertising strategies and policies relating to their online sportsbooks. This discovery is relevant to, *inter alia*, whether and to what extent Defendants' social media posts are intended to provide "news reporting" as opposed to drive traffic to their online sportsbook platforms and to specific bets.

ii.    Defendants' internal and external analyses regarding the "news reporting" provided on their websites, applications, platforms, and/or other forms of public distribution. This discovery is relevant to, *inter alia*, whether and to what extent Defendants' businesses are to provide news (as opposed to betting promotions) to the public.

14

iii.    Defendants' internal and external communications regarding using images of MLB players on their sportsbook platforms but not images of players in other sports (like the NFL). This discovery is relevant to, *inter alia*, whether Defendants' uses of MLB player images is necessary and merely informational.

iv.    Documents and communications pertaining to Defendants' gambling disclaimers on their social media and sportsbook platforms, including but not limited to those related to any state, federal, or other regulatory policies regarding when such disclaimers are necessary. This discovery is relevant to, *inter alia*, whether and which content is considered a gambling promotion (as opposed to news).

v.    Defendants' contracts (if any), including licensing or copyright agreements, that purportedly provide them with the right to use MLB player images on their websites, applications, platforms, and/or other forms of public distribution. This discovery is relevant to, *inter alia*, which, if any, of Defendants' uses are authorized (and by whom).

vi.    Documents reflecting when and why Defendants began utilizing MLB player images on their sportsbook betting websites and/or mobile applications. This discovery is relevant to, *inter alia*, whether such uses are for informational (rather than promotional or commercial) purposes.

vii.    Defendants' internal and external analyses regarding the commercial benefit of using MLB player images on their websites, applications, platforms, and/or other forms of public distribution. This discovery is relevant to, *inter alia*, the commercial value of MLB player names, images, and likenesses.

viii.    Defendants' internal and external communications and analyses regarding their sports betting lines and odds, including how those odds are set, whether they are the same as

the odds provided by other sportsbook companies, and whether they are subject to change. This discovery is relevant to, *inter alia*, whether such information is the equivalent to other sports news.

ix.  Defendants' internal communications and/or analyses regarding their uses of MLB player images for the purported purposes of assisting bettors with disabilities identify players. This discovery is relevant to, *inter alia*, Defendants' purported justifications for using MLB player images. *See* bet365 Motion to Dismiss, Dkt. 34, at 4.

x.  Financial information regarding the sales and profits related to Defendants' uses of MLB player names, images, and likenesses. This information is relevant to, *inter alia*, the damages related to Defendants' misappropriation.

**Defendants' Response:** Given the pleading deficiencies that will greatly expand the scope of discovery, Defendants believe discovery should be stayed pending resolution of their Motions to Dismiss. However, should this case proceed, Defendants will need to conduct discovery on at least the following issues:

i.  The commercial value of each individual MLB player on whose behalf Plaintiff seeks to vindicate rights. This discovery is relevant to, *inter alia*, Plaintiff's ability to bring suit under the Pennsylvania right-of-publicity Statute and the common law, damages, and defending against Plaintiff's claims of purported misappropriation.

ii.  Plaintiff's agreements with MLB players and the Major League Baseball Players Association (MLBPA) regarding the assignment of NIL rights. This discovery is relevant to, *inter alia*, Plaintiff's standing to bring suit under the Pennsylvania right-of-publicity statute and the common law.

iii.  Plaintiff's licensing agreements with third parties, including other gambling operators, news organizations, and entertainment companies, as well as OneTeam. This discovery is relevant to, *inter alia*, Plaintiff's contention that it is entitled to a licensing fee for the

16

use of MLB player images, how MLBPI commercializes MLB Players' purported collective rights, and the value of such purported collective rights.

iv. Plaintiff's and/or OneTeam's licenses and/or settlement agreements related to litigations predicated on similar facts and legal theories, including those with sports betting operators, fantasy sports companies and other news or informational agencies that use player thumbnail or other images including Associated Press, ESPN, Google, Yahoo, etc.. This discovery is relevant to, *inter alia*, Plaintiff's contentions in the entire Complaint, its harm and damages allegations, and the value of the right of publicity right at issue.

v. Plaintiff's awareness of DraftKings' and/or bet365's use of player images on any of its products, advertising, or social media at any time. This discovery is relevant to, *inter alia*, DraftKings' laches and acquiescence defenses.

vi. MLBPI's internal communications and documents regarding their decision to commence offering licenses to various sports betting operators and/or fantasy sports companies in 2024, including MLBPI's decision to commence the instant litigation and similar litigation filed in the United States District Court for the Southern District of New York. This discovery is relevant to, *inter alia*, whether MLBPI's claims are barred by excessive delay and any injury or damages MLBPI claims to have suffered.

vii. Financial information related to MLBPI's and/or its authorized licensing representatives' revenues earned from the licensing of MLB Players' collective rights. This information is relevant to, *inter alia*, the harm or injury allegedly suffered by MLBPI and damages related to Defendants' alleged misappropriation.

**B. Anticipated number of interrogatories per Party:**

- ***Joint Position****:* 25 interrogatories per party for party interrogatories.

**C. Anticipated number of depositions per Party:**

- ***Plaintiff's Position****:* 10 for Plaintiff; 10 for Defendants (collectively)

- ***Defendants' Position****:*  10 for Plaintiff; 10 Party depositions per Defendant; Defendants are also entitled to take third party depositions of the players whose rights MLBPI purports to assert. Given the Complaint's failure to identify those players, the number of third-party depositions Defendants require is not known at this time, though Defendants anticipate it will be greater than the presumptive limit of 10 under Fed. R. Civ. P. 30 (see comments below regarding anticipated third-party discovery).

**D. To the extent either Party proposes to exceed the presumptive limits in the Federal Rules of Civil Procedure for discovery, explain the basis for that proposal.**

- ***Plaintiff's Position****:* Plaintiff does not expect to exceed the presumptive discovery limits in the Federal Rules of Civil Procedure. To the extent Defendants will seek to exceed the presumptive limits based on their purported need to take depositions of (potentially hundreds of) MLB players, Plaintiff opposes such depositions as irrelevant, extraordinarily burdensome, and harassing.

- ***Defendant DraftKings' Position****:*  Defendant DraftKings anticipates it may be necessary to exceed the presumptive discovery limits in the Federal Rules of Civil Procedure.  Plaintiff has alleged a violation of Pennsylvania's right-of-publicity statute, which requires that each "natural person" on whose behalf a plaintiff is bringing suit has "commercial value" in his or her name or likeness "through the investment of time, effort, and money."  To determine the investment each player has made in his name or likeness through time, effort, and money, DraftKings may need to depose each player whose rights are being asserted.

- ***Defendant bet365's Position****:*  For party discovery, Defendant bet365 does not expect to exceed the presumptive discovery limits in the Federal Rules of Civil Procedure.

**E. Do the Parties anticipate the need for any third-party discovery?  If so, identify the likely third-parties and the discovery to be sought.**

- ***Plaintiff's Position****:* Plaintiff anticipates that third-party discovery may be necessary. Plaintiff anticipates such discovery from OneTeam Partners, MLBPI's group licensing agent that negotiates licenses for the use of certain

MLB player NIL, including with FanDuel Sportsbook for FanDuel's use of MLB player NIL in its sportsbook app. Discovery may be necessary from additional to-be-determined third parties to the extent Defendants rely upon any agreements or communications with such third parties (*e.g.*, Major League Baseball; Getty Images) to defend their use of the MLB player identities at issue. While Defendants have indicated their intention to seek depositions of "hundreds" of third-party MLB players, Plaintiff opposes such depositions as irrelevant, extraordinarily burdensome, and harassing.

- ***Defendants' Position***: Defendants anticipate that third-party discovery will be necessary from third-party MLB players. Defendants are entitled to depose such MLB players regarding the commercial value (if any) of each of their name, image and likeness rights. Defendants also anticipate additional such discovery from FanDuel Sportsbook, Underdog Sports, Caesar's Sportsbook, BetMGM, ESPN Bet, and other gambling operators, to the extent that Plaintiff does not possess the information necessary to determine MLBPI's licensing agreements with third parties. Further, Defendants anticipate that discovery may be necessary from OneTeam Partners and from third parties who have entered into license agreements with MLBPI and/or any of its licensing representatives, including OneTeam partners. Discovery may be necessary from additional to-be-determined third parties.

**F.  Do the Parties anticipate the need for experts?  If so, identify the subjects on which the expert(s) may opine.**

- ***Plaintiff's Position***: While Plaintiff has not yet designated any experts, it is likely that experts will be designated on issues related to the sports betting industry, news and advertisements, consumer surveys, and on MLBPI's damages.

- ***Defendants' Position***: Defendants have not yet designated any experts, but anticipate designating experts on issues relating to sports licensing, valuation of licensing agreements, the sports media industry, the sports media industry, news and advertisements, consumer surveys, and MLBPI's damages.

**IV.    Status of Discovery**

      **The Parties must summarize the status of discovery to-date.  If nothing has been done in terms of discovery, the Parties should explain why.   In general, the Court prefers the parties to begin discovery prior to the Rule 16 conference.**

<u>**Joint Response:**</u>

      The parties have conferred about discovery and will be exchanging their initial disclosures by December 11, 2024. Plaintiff MLBPI expects to serve initial Requests for Production of Documents in advance of the Rule 16 conference. The parties are also working on stipulations regarding ESI and on confidentiality issues. At the parties' Rule 26(f) conference, Defendants advised Plaintiff that they may seek a stay of discovery while their motions to dismiss are pending. Plaintiff's position is that a stay of discovery is not appropriate, but Plaintiff indicated that depositions could be stayed until the motions to dismiss are decided, with the parties proceeding with solely written discovery in the interim, and Plaintiff has indicated its positions on discovery deadlines in the sections below. Defendants' position is that a stay of discovery is appropriate pending the outcome of the motions to dismiss because Plaintiff's Complaint is deficient both on its face and on the merits. The necessary discovery required to litigate the case based on the operative Complaint would be overly burdensome for all parties.

**V.    Proposed Case Management Deadlines[5]**

When completing this section, the Parties should presume that the Court will **not** bifurcate fact and expert discovery.  Therefore, the Parties should propose dates that take that presumption into account.

**A.  Deadline to serve initial disclosures under Rule 26(a)(1) (*must be exchanged at least one (1) business day before Rule 16 conference):**

- December 11, 2024

**B.  Deadline to amend pleadings to add claims or Parties (*must be as early as practicable to avoid prejudice or unnecessary delays):**

- ***Joint Response***: 14 days after decision on Defendants' Motions to Dismiss

**C.  Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any):**

- ***Plaintiff's Response***: April 29, 2025
- ***Defendants' Response***:  May 30, 2025

**D.  Deadline for rebuttal expert reports (if any):**

- ***Plaintiff's Response***: May 27, 2025
- ***Defendants' Response***: July 3, 2025

**E.  Deadline to complete discovery:**

- ***Plaintiff's Response***: June 10, 2025
- ***Defendants' Response***:  September 26, 2025

**F.  If any Party seeks more than 120 days for fact discovery, explain why.**

- ***Plaintiff's Response***: MLBPI seeks approximately 180 days from the date of the Rule 16 conference to complete fact and expert discovery. MLBPI submits that this additional time is warranted in light of the fact-intensive inquiries at issue, multiple motions to dismiss, multiple defendants, expert discovery, and potentially third-party discovery.

- ***Defendants' Response***: In the event discovery is not stayed, Defendants seek approximately 290 days from the date of the Rule 16 conference to complete

---

[5] If a stay of discovery is entered, Defendants propose that the parties confer after the motions to dismiss are decided to determine an appropriate schedule.  The dates Defendants' propose in this section apply only if the Court does not grant a stay of discovery.

fact and expert discovery. DraftKings submits that this additional time is warranted in light of the fact-intensive inquiries at issue, multiple motions to dismiss, multiple defendants, potentially hundreds of depositions, expert discovery, and potential third-party discovery.

**G. Deadline to file motion for summary judgment:**
- ***Plaintiff's Response***: August 15, 2025
- ***Defendants' Response***: October 30, 2025

## VI.    Deposition Scheduling

The Court expects the Parties to meet and confer as soon as practicable to set aside dates to hold open for depositions before the close of discovery. If the Parties have not already done so, the Court will order the Parties to do so within two weeks of the Rule 16 conference.

**Have the Parties set aside dates for deposition?    ___ Yes   X  No**

**If yes, what are those dates?** _____

**If no, when do the parties intend to confer, and how many dates do they intend to set aside?**

- ***Joint Response***: The parties have not yet set aside dates for any potential depositions because they believe that it will be most efficient to schedule depositions after exchanging written discovery. Given the parties' difference in position regarding the scope of discovery and depositions, the parties anticipate seeking the Court's guidance before they can set aside dates for depositions, but regardless, believe it is appropriate to hold off on scheduling depositions until the Court rules on the pending motions to dismiss.

**VII.    Electronic Discovery**

      <u>Prior to the Rule 16 conference</u>, the Court expects the Parties to have a thorough discussion about electronic discovery, including but not limited to 1) the need for electronically stored information ("ESI"), 2) sources of ESI, 3) the anticipated scope of electronic discovery, 4) the identity of potential custodians, 5) whether search terms will be necessary and, if so, any limitations thereto, 6) the respective burdens of collecting, reviewing, and producing ESI, including any claims for cost-shifting under the Federal Rules of Civil Procedure, and 7) any anticipated problems with electronic discovery.  The Parties should summarize their discussion on these issues here.  The Court expects counsel who attends the Rule 16 conference to be familiar with and able to discuss any ESI-related issues that might arise.

      In addition, the Parties should state whether they have agreed to an ESI stipulation.  If so, <u>the Parties should submit the stipulation to the Court in advance of the Rule 16 conference</u>.  If not, the Parties should identify what issues need to be resolved to finalize the stipulation.

- *<u>Joint Response</u>*:  The parties agree that an ESI stipulation is appropriate for this case and will be negotiating the terms of an ESI stipulation to be submitted to the Court as soon as is practicable.

**VIII.    Protective Orders and Confidentiality Agreements**

      The Parties should indicate whether they anticipate the need for a protective order in this case.  If so, the Parties must explain what type of information needs protection from disclosure and why such protection is warranted under governing standards.  In addition, the Parties are directed to Judge Marston's Policies and Procedures concerning Protective Orders and Confidentiality Agreements.

- *<u>Joint Response</u>*: The parties agree that a protective order or confidentiality agreement will be necessary in this case to protect commercially sensitive information. Upon reaching an agreement, the parties will make a request for an order by motion pursuant to Judge Marston's Policies and Procedures concerning Protective Orders and Confidentiality Agreements.

IX.    **Alternative Dispute Resolution**

    A.  **Have the Parties engaged in any settlement discussions?  If so, set forth the status of those negotiations.  If not, explain why not.**

- *<u>Plaintiff's Response</u>*: While MLBPI remains open to resolving this matter through settlement, there are no active settlement discussions at this time, and MLBPI will thus continue to prosecute violation of its rights through this litigation.

- *<u>Defendants' Response</u>*: Defendants remains open to a business resolution through settlement, but there are no active settlement discussions at this time.

    B.  **Have the Parties explored or considered other forms of alternative dispute resolution?  If so, summarize those efforts.  If not, state the Parties' positions with respect to ADR, as required under Local Rule of Civil Procedure 53.3.**

- *<u>Plaintiff's Response</u>*: The parties have not yet explored other forms of alternative dispute resolution. To the extent Defendants are willing to engage in such ADR processes in good faith, MLBPI welcomes a settlement conference with the Court or with the Magistrate Judge in this case.

- *<u>Defendants' Response</u>*: The parties have not yet explored other forms of alternative dispute resolution.  Defendants are willing to engage in a settlement conference with the Court or with a Magistrate Judge as well as mediation.

    C.  **Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.**

- *<u>Plaintiff's Response</u>*: Jeffrey Kessler; David Greenspan; Diana Leiden.

- *<u>DraftKings' Response</u>*: Megan Bannigan; Jared Kagan.

- *<u>bet365's Response</u>*: Airina Rodrigues; Art Zorio.

X.    **Consent to Send Case to a Magistrate Judge**

    **The Parties should indicate whether they consent to have a United States Magistrate Judge conduct any or all proceedings in this case, pursuant to 28 U.S.C. § 636(c).**

- *<u>Joint Response</u>*: Except as set forth in Section IX.B above, the parties do not consent to a Magistrate Judge to conduct any of the proceedings in this matter.

## XI.    Policies and Procedures

      **Judge Marston's Policies and Procedures are available for the Parties to review on the Court's website.  By signing below, counsel for each Party and/or each *pro se* Party represents that he or she has reviewed the Judge's Policies and Procedures and acknowledges the requirements contained therein.  The Parties and their counsel further acknowledge by signing below that Judge Marston will strike pleadings and other submissions that do not comply with her Policies and Procedures.**

## XII.    Other Matters

      **The Parties should identify any other issues that have not been addressed above but may require the Court's attention (e.g., anticipated motions, bifurcation, privilege issues, etc.).**

Date: December 5, 2024

_/s/ Jeffrey L. Kessler_
Counsel for Plaintiff MLB Players Inc.

Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David L. Greenspan (*pro hac vice*)
dgreenspan@winston.com
Robert S. Pannullo (*pro hac vice*)
rpannullo@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4700

Diana H. Leiden (*pro hac vice*)
dhleiden@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700

Peter Leckman (PA Id. 312076)
pleckman@langergrogan.com
Howard Langer (PA Id. 25403)
hlanger@langergrogan.com
Mary Catherine Roper (PA Id. 71107)
Mroper@langergrogan.com
Kevin Trainer (PA Id. 326064)
ktrainer@langergrogan.com
**LANGER GROGAN & DIVER PC**
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: (215) 320-5660
Fax: (215) 320-5703

_/s/ Megan K. Bannigan_
Counsel for Defendant DraftKings Inc.

Megan K. Bannigan (*pro hac vice*)
David H. Bernstein (*pro hac vice*)
Jared I. Kagan (*pro hac vice*)
Jacob Hochberger (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
mkbannigan@debevoise.com
dhbernstein@debevoise.com
jikagan@debevoise.com
jhochberger@debevoise.com

Barry L. Cohen (PA Id. 68864)
Julie M. Latsko (PA Id. 315782)
**ROYER COOPER COHEN BRAUNFELD**
Two Logan Square
100 N. 18th St. Suite 710
Philadelphia, PA 19103
Tel: (215) 839-1000
Fax: (484) 362-2630
bcohen@rccblaw.com
jlatsko@rccblaw.com

_/s/ Airina L. Rodrigues_
Counsel for Defendant bet365 Group Unlimited

Darius C. Gambino
PA Bar No. 83496
1500 Market Street, 38th Floor
Philadelphia, PA 19064
P: 215.972.7173
E: darius.gambino@saul.com
Airina L. Rodrigues
(*pro hac vice* admitted)
E: arodrigues@bhfs.com
Arthur A. Zorio
(*pro hac vice* admitted)
E: azorio@bhfs.com
Matthew J. McKissick
(*pro hac vice* admitted)
E: mmckissick@bhfs.com
**BROWNSTEIN HYATT FARBER
SCHRECK LLP**