UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MLB PLAYERS, INC.<br><br>Plaintiff,<br><br>v.<br><br>DRAFTKINGS, INC., f/k/a/ DK CROWN HOLDINGS, INC., and BET365 GROUP LIMITED,<br><br>Defendants. | CASE NO.: 2:24-cv-04884-KSM<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT BET365 GROUP LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS**

53723238.1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.    bet365's News Reports and Presentations Are Entitled to First Amendment Protection ................................................................................... 3

    II.    The Third Circuit's Transformative Use Test Is Inapplicable ............................... 6

    III.    The Statute's Exceptions Are Broad and Must be Construed Consistent with the First Amendment ................................................................................... 7

    IV.    MLBPI's Factual Allegations Are Insufficient To Confer Standing ................... 10

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bowley v. City of Uniontown Police Dept.*,
  404 F.3d 783 (3d Cir. 2005)..................................................................................................3

*C.B.C. Dist. and Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
  505 F.3d 818 (8th Cir. 2007) ...............................................................................................5, 8

*CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*,
  259 F.R.D. 398 (D.Minn. 2009)............................................................................................5

*Com. v. Ludwig*,
  583 Pa. 6, 874 A.2d 623 (2005) ....................................................................................2, 5, 7

*Daniels v. FanDuel*,
  109 N.E.3d 390 (Ind. 2018) ...........................................................................................5, 8, 9

*Daniels v. FanDuel*,
  909 F.3d 876 (7th Cir. 2018) ................................................................................................9

*Daniels v. FanDuel, Inc.*,
  Case No. 1:16-CV-01230, 2017 WL 4340329 (S.D. Ind. Sept. 29, 2017) .....................7, 8, 9

*Dietrich & Assocs., Inc. v. Oct. Three LLC*,
  Case No. 20-5002, 2021 WL 1614399 (E.D. Pa. Apr. 26, 2021) .........................................3

*Dryer v. National Football League*,
  55 F. Supp. 3d 1181 (D.Minn. 2014)....................................................................................5

*In re River Valley School District*,
  Case No. 136 C.D. 2023, 2024 WL 5131741 (Pa.Cmwlth. 2024) .......................................2

*Gionfriddo v. Major League Baseball*,
  114 Cal.Rptr.2d 307 (Cal.Ct.App. 2001) .............................................................................5

*Hart v. Elec. Arts. Inc.*,
  717 F.3d 141 (3d. Cir. 2013).........................................................................................5, 6, 7

*Moore v. Univ. of Notre Dame*,
  669 F. Supp. 1330 (N.D. Ind. 1997) .....................................................................................8

*Time Inc. v. Sand Creek Partners, L.P.*,
  825 F.Supp. 210 (S.D. Ind. 1993).........................................................................................8

53723238.1

*Zacchini v. Scripps-Howard Broadcasting Co.*,
  433 U.S. 562 (Powell, J. dissenting)..................................................................................6

**Statutes**

1 PA.CONST. STAT. § 1922(3) ...................................................................................2, 5, 7

42 PA. CONST. STAT. § 8316.....................................................................................2, 5, 7

**Other Authorities**

First Amendment ................................................................................................... *passim*

Sharon Desh & Amber Freeney, *4 Witness Presentation Lessons From the Depp-Heard Trial*, WINSTON & STRAWN LLP (Aug. 2, 2022)...............................................4

## INTRODUCTION

Defendant bet365 Group Limited ("bet365") is mindful of this Court's discouragement of reply and sur-reply briefs.[1]  However, a reply brief is necessary to rebut issues and points of law that were not discussed in bet365's initial brief.

Plaintiff MLB Players, Inc.'s ("MLBPI") assertion that bet365 cannot report news because it is a sports betting company misses the mark.  The First Amendment does not protect only news outlets.  The First Amendment protects speech—not parties.  Anyone who publishes factual information about matters of public concern is entitled to the broad protection afforded by the U.S. Constitution's guarantee of free speech.  This is true for sports betting companies and professional sports leagues, like Major League Baseball ("MLB").[2]  While the forms of news reports have changed from printed newspapers and broadcast radio to websites and social media posts, the principles of constitutional law protecting that speech have not.

MLBPI's comparisons to trading cards and video games are unavailing.  bet365 does not sell collectible products depicting MLB players.  Trading cards and video games are *products* that necessarily incorporate the identities of MLB players within the products being sold to consumers.  Sports betting, in contrast, is an entertainment *service* (taking bets and paying out winnings) that requires the constant dissemination of factual information to fully inform consumers, enabling them to make a betting decision (or abstain from betting) as an ancillary service.  Player attributes serve as mere reference points within such service.

Further, video games are a unique, modern form of creative expression, triggering different

---

[1] J. Marston's Policies & Procedures Sec. II(B)(4).
[2] MLB owns and operates its own "News" website here: https://www.mlb.com/news.  bet365 respectfully requests the Court take judicial notice of MLB's operation of this website and the contents of the news articles published therein.  *See* MLBPI Oppo. at 5, n. 3 (citing multiple cases showing that private websites, including the contents of news articles, are properly subject to judicial notice); DraftKings Mot. at 4, n. 2 & 5, n. 4 (same); bet365 Mot. at 2, n.4 & 3, n. 6 (same).

1

legal principles. As an interactive form of digital art, courts have consistently recognized video games as expressive works protected by copyright law. For this reason, the Third Circuit adopted principles borrowed from copyright law to strike a balance between the First Amendment and right of publicity interests when it was specifically evaluating such expressive works (in *Hart*). Critically, however, the Third Circuit's balancing test has nothing to do with news reports. MLBPI's contention that the Third Circuit's transformative use test is controlling is misplaced.

MLBPI dedicates a significant amount of its Opposition attempting to insert language into Pennsylvania's right of publicity statute, 42 PA. CONST. STAT. § 8316 (the "Statute"), and modify the meaning of the language the General Assembly ultimately adopted when passing this law. The Statute is not as narrow as MLBPI contends, and the distinctions that MLBPI tries to draw between the Statute's language and analogous statutes around the country is a hair-splitting exercise that falls flat. MLBPI fails to explain how the Statute's legislative history shows that the Statute was intended to be construed narrowly—it provides no explanation for why the legislative changes were made, or what significance those changes were meant to have. MLBPI's reliance on two versions of the Statute, erroneously construed as the Statute's "legislative history," is a self-serving, conclusory argument devoid of substance.

Worse, the attempt by MLBPI to have the Statute's exemption narrowed would cause the Statute itself to violate the First Amendment by prohibiting constitutionally protected speech. This attempt violates a sage principle of statutory construction that statutes must be interpreted so as to avoid constitutional conflicts. *In re River Valley School District*, Case No. 136 C.D. 2023, 2024 WL 5131741, at *16 (Pa.Cmwlth. 2024) ("Section 1922(3) of the Statutory Construction Act requires us to presume that the General Assembly does not intend to violate the United States Constitution, 1 PA. CONST. STAT. § 1922(3), and to interpret statutes in order to avoid constitutional

difficulties, [*Com. v. Ludwig*, 583 Pa. 6, 874 A.2d 623, 628 (2005)].  In other words, the standard set forth by the United States Constitution is the floor with which all statutes must comport….").  The First Amendment controls.

The speech at issue—bet365's MLB players listings and social media posts—is ripe for the Court's constitutional analysis at the pleading stage.  No further facts are needed.  Because bet365's news reports are entitled to First Amendment protection, or otherwise fall within the Statute's exceptions that must be at least as broad as the First Amendment, MLBPI's claims should be dismissed.

## ARGUMENT

**I.     bet365's News Reports and Presentations Are Entitled to First Amendment Protection**

As a threshold matter, district courts may determine the constitutional protection of speech at the pleading stage and dismiss the action when the defendant's First Amendment interests supersede the plaintiff's individual interests.  *See, e.g., Bowley v. City of Uniontown Police Dept.*, 404 F.3d 783 (3d Cir. 2005) (affirming the district court's decision granting a newspaper's motion to dismiss because the First Amendment shielded the newspaper from right-to-privacy liability for publishing truthful information).  Contrary to MLBPI's assertions, discovery is not always necessary in First Amendment case, [3] particularly when the necessary facts related to the speech at issue is readily available from the Complaint and corresponding briefing.

MLBPI places great emphasis on the fact that bet365 is not a news outlet.  In fact, bet365 operates a comprehensive news website, separate from its sportsbook website, which reports on

---

[3] MLBPI cites *Dietrich & Assocs., Inc. v. Oct. Three LLC* for its proposition that dismissal of this action at the pleading stage is improper. Case No. 20-5002, 2021 WL 1614399 (E.D. Pa. Apr. 26, 2021).  Oppo. at 16.  That case involved a claim of tortious interference with business relationships, and the asserted defense supporting the motion to dismiss was that the action was barred by the statute of limitations.  2021 WL 1614399, at *1. The parties conflicting timeline of events raised a factual issue, causing the court to deny the motion.  *Id.*, at *4.  *Dietrich & Assocs. Inc.* is clearly inapposite.

3

dozens of amateur, college and professional sports.[4] But whether bet365 is a news outlet or not presents no fact issues that would prevent resolution of this case on a motion to dismiss, because it is entirely beside the point. The nature of one's business is irrelevant for First Amendment purposes, and many businesses today publish articles or blog posts related to the goods or services they provide. Such publications, which often blend factual information with commentary or criticism, are not stripped of constitutional protection simply because of the party's business model.

For example, law firms often post client alerts, press releases, or news articles about current events involving legal issues in which the law firm specializes. The fact the law firm provides legal services does not, in itself, strip the article of constitutional protection, nor does it automatically convert the entire article into an advertisement. A law firm's article about lessons learned from the Johnny Depp-Amber Heard defamation trial,[5] for instance, is not less deserving of First Amendment protection than an article published by the Philadelphia Inquirer. For that reason, if the public figures mentioned in that article claimed the article violated their rights of publicity, the same constitutional analysis would apply, and the law firm's free speech protections would outweigh the individuals' interests as a matter of law.

bet365's use of gaming-related disclaimers does not affect the analysis. Like all lawful gaming operators in the Commonwealth, bet365 must maintain regulatory compliance with the Pennsylvania Gaming Control Board. To do so, gaming licensees and their affiliates are required by the regulatory board to conspicuously display disclaimers in virtually all public

---

[4] *See* bet365's news website available at https://news.bet365.com/en-us. The Court may take judicial notice of this website for the same reasons set forth in footnote 2, *supra*.

[5] Sharon Desh & Amber Freeney, *4 Witness Presentation Lessons From the Depp-Heard Trial*, WINSTON & STRAWN LLP (Aug. 2, 2022), https://www.winston.com/en/insights-news/4-witness-presentation-lessons-from-the-depp-heard-trial.

communications, and when they operate a brick-and-mortar casino, similar disclaimers must be posted throughout the premises. Gaming operators liberally use such disclaimers to maintain regulatory compliance, because as MLBPI concedes, the disclaimers are "state-mandated."[6] But displaying these state-mandated disclaimers does not transform all speech published with the disclaimer into an advertisement in the same manner that publishing a disclaimer on a casino resort site does not strip constitutional protection from entertainment and expressive activities that occur there. Gaming disclaimers are irrelevant to the constitutional analysis, and MLBPI cannot rely on a state gaming regulation to carry the day on an issue of federal constitutional law. Furthermore, a gaming regulation cannot be construed as magically transforming protected speech into unprotected speech because the disclaimer is mandated by the General Assembly. *See,* 1 PA. CONST. STAT. § 1922(3), *Ludwig*, 874 A.2d at 628.[7]

Every court that has considered the precise issue involved here—whether the use of player images, statistics, and names when reporting the performance of professional athletes to the public is constitutionally protected—has held that the First Amendment interests outweigh the players' individual rights of publicity interests as a matter of law. *See C.B.C. Dist. and Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007); *CBS Interactive Inc. v. Nat'l Football League Players Assoc. Inc.*, 259 F.R.D. 398 (D.Minn. 2009); *Dryer v. National Football League*, 55 F. Supp. 3d 1181 (D.Minn. 2014); *Daniels v. FanDuel*, 109 N.E.3d 390 (Ind. 2018); *Gionfriddo v. Major League Baseball*, 114 Cal.Rptr.2d 307 (Cal.Ct.App. 2001). This case is no different.

---

[6] Oppo. at 18.
[7] Equally unavailing is MLBPI's argument that third parties, such as FanDuel, have recently executed license agreements to settle lawsuits asserted against them. Oppo. at 6, 30. Settlement agreements are not a pillar of statutory construction.

## II. The Third Circuit's Transformative Use Test Is Inapplicable

MLBPI argues that the Third Circuit's transformative use test as articulated in *Hart v. Elec. Arts. Inc.* controls this case. 717 F.3d 141 (3d. Cir. 2013). However, *Hart* is distinguishable and its holding is narrower than MLBPI contends.[8]

In *Hart*, the Third Circuit's adoption of the transformative use test was limited to *expressive* works, in that case, video games—it had nothing to do with news reports, factual accounts, or presentations. The Third Circuit began its analysis by "noting the self-evident: video games are protected as **expressive speech** under the First Amendment." *Id.* at 148 (emphasis added). After considering the relevant interests at issue—the freedom of expression and the right of publicity—the Third Circuit analyzed three modern balancing tests: "the commercial-interest-based Predominant Use Test, the trademark-based *Rogers* Test, and the copyright-based Transformative Use Test." *Id.* at 153. The Court looked to "intellectual property law for guidance on how to balance property interests against the First Amendment" and found its guidance in the "broader vista of copyright law." *Id.* 158. Arguably, this framework was logical, given that the works at issue (video games) were undisputably expressive works—the province of copyright law—similar to assessing the free speech interests in a charcoal portrait of the Three Stooges or a comic book depicting the musicians Johnny and Edgar Winter as "villainous half-man, half-worm creatures." *Id.* at 159–60.

In adopting the balancing test for expressive works, the Third Circuit stated: "[W]e find that the Transformative Use Test is the proper analytical framework to apply to cases ***such as the one at bar***." *Id*. at 165 (emphasis added). The Third Circuit explained that "the Test ensures that

---

[8] It is important to note that the General Assembly expressly recognizes expressive works separately than news. 42 Pa.C.S.A. § 8316(e)(2)(iii) (separate distinct exemption for "an expressive work", defined as a "literary, dramatic, fictional, historical, audiovisual or musical work regardless of the communications medium by which it is exhibited, displayed, performed or transmitted, other than when used or employed for a commercial or advertising purpose.").

already-existing First Amendment protections in right of publicity cases apply to video games with the same force as to biographies, documentaries, docudramas, and other *expressive works* depicting real-life figures." *Id*. (quotations omitted, emphasis added). Additionally, the transformative use test "does not result in the sort of backward-looking jurisprudential revision that might disturb prior protections for **expressive speech**." *Id.* (emphasis added). Most significantly, the Third Circuit acknowledged that the Test "***restricts right of publicity claims to a very narrow universe of expressive works***," tacitly acknowledging that a right of publicity claim should not be accepted in instances of news programming or reporting. *Id.* at 163-164 (citing *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 at 581 (Powell, J. dissenting)).

Here, unlike *Hart*, bet365's use of names, images, and likenesses in news reports and presentations does not fall within the classification of an expressive work. bet365 did not incorporate MLB players into a video game, comic book, or portrait, nor did it use MLB players' attributes as the foundation to build its own creative portrayal of those players. Because *Hart*'s transformative use test is so obviously inapplicable here, bet365 did not invoke the Third Circuit's transformative use test as a defense in bet365's opening brief. MLBPI would have the Court believe that bet365 refused to cite *Hart* "because [its use] of MLB player's identities cannot satisfy the [test]."[9] But *Hart* is not simply not controlling.

### III. The Statute's Exceptions Are Broad and Must be Construed Consistent with the First Amendment

"In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used… (3) That the General Assembly does not intend to violate the Constitution of the United States…." 1 PA. CONST. STAT. § 1922(3); *Ludwig*, 874 A.2d at 628.

---

[9] Oppo. at 2.

MLBPI contends that because the Statute does not use the term "newsworthy," the on-point cases from sister states and other federal courts provide no guidance to the Court. MLBPI conveniently ignores the fact that the Statute uses the phrase "news report or news presentation *having public interest*"—the same language used in analogous statutes, which is coextensive with the First Amendment and actually *broader* than the term "newsworthy." 42 PA. CONST. STAT. § 8316(e)(2)(ii).

The district court's in-depth analysis of the language in Indiana's right-of-publicity statute is particularly instructive. *Daniels v. FanDuel, Inc.*, Case No. 1:16-CV-01230, 2017 WL 4340329 (S.D. Ind. Sept. 29, 2017). There, the district court granted the defendants' motions to dismiss after closely examining two statutory exceptions: (1) "material that has political or newsworthy value," and (2) communications made "in connection with the broadcast or reporting of an event or a topic of general *public interest*." *Id.* at *3 (emphasis added).

The *Daniels* plaintiff made the same arguments MLBPI advances here—that the defendant-fantasy sports operators' use of player identities was commercial speech and did not amount to "reporting" information. *Id.* at *3–4. In evaluating the exceptions, the *Daniels* Court noted that "the scope of subject matter which may be considered 'of public interest' or 'newsworthy' has been defined in most liberal and far reaching terms." *Id.* at *4. The Court elaborated that such subject matter is "by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *Id.* (quoting *Time Inc. v. Sand Creek Partners, L.P.*, 825 F.Supp. 210, 211–12 (S.D. Ind. 1993)). Given the "plethora of media outlets dedicated to the coverage of [] sporting events" and the "number of publications relating specifically to sports," the Court "[could not] ignore the fact that this is a

matter of public concern." Thus, the "newsworthy" exception was satisfied. *Id.* at *6 (quoting *Moore v. Univ. of Notre Dame*, 669 F. Supp. 1330, 1336 n.11 (N.D. Ind. 1997)).

In evaluating the "public interest" exception, the Court noted the inclusion of the "broadcast or reporting" language, which was noticeably absent in the newsworthy exception. The Court concluded that because the defendants' "websites could be used as 'reference sources,' either for purposes of playing the associated game, or for information about the collegiate sports and athletes represented on the websites," the uses satisfied the "broadcast or reporting" requirement. *Id.* at *8–9 (citing *C.B.C.*, 505 F.3d at 818). The Court also applied its "interpretative preference to read statutes in a manner that avoids constitutional issues," which bolstered its conclusion that the defendant-fantasy sports operators' conduct constituted "reporting." *Id.* at *9.[10]

MLBPI's argument that "newsworthy" exceptions are unrelated to "public interest" exceptions is a distinction without a difference. As the district court in *Daniels* explained, both types of subject matter are defined in the "most liberal and far reaching terms." *Daniels*, 2017 WL 4340329 at *4. There is no substantive legal difference between the two phrases for First Amendment purposes. If there is, the difference works in bet365's favor, as the term "public interest" is actually broader than the term "newsworthy"—that is, the subject material needs only to be of interest to the general public, it does not necessarily need to relate to a current event or be considered hot-off-the-press "news." MLBPI's contention that similar statutes containing a "newsworthy" exception are inapplicable is meritless.

The ineffectiveness of MLBPI's "newsworthy" argument is underscored by its inability to point to anything in the Statute's legislative history that actually supports its position. MLBPI

---

[10] As explained in bet365's initial brief, once the Indiana Supreme Court answered a certified question, the Seventh Circuit affirmed the district court's dismissal of the action on appeal. *Daniels v. FanDuel*, 909 F.3d 876 (7th Cir. 2018).

9

argues that the General Assembly adopted the language "news report or news presentation having public interest" instead of "political or newsworthy value," thereby narrowing the scope of the exception.[11]  However, MLBPI provides no support for this argument, and the General Assembly arguably broadened the scope of the Statute by referencing the public interest.  MLBPI completely fails to support its legislative history argument with evidence of *why* the General Assembly made the changes it did.  In any event, the First Amendment controls the analysis of the scope of the exemption, and bet365's speech is protected.

### IV.    MLBPI's Factual Allegations Are Insufficient To Confer Standing

In essence, MLBPI asks this Court to contort the Statute to fit its business model.  But the Statute was not drafted to serve MLBPI or anyone else attempting to enforce a *collective* right of publicity.  The Statute provides a cause of action for a "natural person," not the licensing agent for a collective group, and although the Statute allows for a "corporation authorized in writing by [a] natural person" to assert a claim, the individual harmed must still be identified.

For this reason, the Statute also requires the plaintiff to show a "commercial value" in their name or likeness—something MLBPI fails to do.  MLBPI's blanket assertion that all MLB players automatically have a commercial value in their likenesses by virtue of being baseball players is inadequate, and bet365 is prejudiced by not knowing *who*, out of the hundreds of professional baseball players MLBPI purportedly acts on behalf of, may have actionable rights under the Statute in the first place.  Because the Statute does not fit MLBPI's unique circumstances, MLBPI improperly bends the law to meet its needs.

## CONCLUSION

Based on the foregoing, MLBPI's Complaint should be dismissed in its entirety.

---

[11] Oppo. at 11.

53723238.1

| | |
|---|---|
| **Dated:**  January 13, 2025 | Respectfully submitted,<br><br>**SAUL EWING LLP**<br><br>By: *s/Darius C. Gambino*<br>Darius C. Gambino<br>PA Bar No. 83496<br>1500 Market Street, 38th Floor<br>Philadelphia, PA  19064<br>P: 215.972.7173<br>E: darius.gambino@saul.com<br><br>Airina L. Rodrigues<br>(*pro hac vice* admitted)<br>E: arodrigues@bhfs.com<br>Arthur A. Zorio<br>(*pro hac vice* admitted)<br>E: azorio@bhfs.com<br>Matthew J. McKissick<br>(*pro hac vice* admitted)<br>E: mmckissick@bhfs.com<br>BROWNSTEIN   HYATT   FARBER SCHRECK LLP<br><br>*Attorneys for Defendant*<br>*BET365 GROUP LIMITED* |

11

53723238.1