IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MLB PLAYERS, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **DRAFTKINGS, INC.,** *f/k/a DK Crown Holdings Inc.*, <br><br> Defendant. | CIVIL ACTION <br><br> No. 24-4884-KSM |

### MEMORANDUM

**Marston, J.**  May 21, 2025

    Plaintiff MLB Players, Inc. ("MLPBI") brings statutory and common law claims against Defendant DraftKings, Inc. for misappropriation of publicity and unjust enrichment related to the unauthorized use of the names, images, and likenesses ("NILs") of major league baseball players in its online and mobile sportsbook platforms and related social media posts. (*See generally* Doc. No. 1.)  On March 14, 2025, the Court, with one exception not relevant here, denied DraftKings's motion to dismiss. (*See* Doc. Nos. 54–55 (collectively, the "March 14, 2025 Memorandum").)[1]  DraftKings now moves to certify portions of the Court's ruling for interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. Nos. 60, 62.)  MLBPI opposes the motion. (Doc. No. 61.)  The Court held oral argument on April 30, 2025.  For the reasons discussed below, the motion is denied.

---

[1] The Court assumes familiarity with the March 14, 2025 Memorandum, *see MLB Players, Inc. v. DraftKings, Inc.*, __ F. Supp. 3d __, 2025 WL 834201 (E.D. Pa. Mar. 17, 2025), and does not reiterate the facts or summarize the legal conclusions here.

I.       **LEGAL STANDARD**

"Generally, an order denying a dispositive motion," like the March 14, 2025 Memorandum, "is not immediately appealable because it is not a final judgment." *Fair Housing Rights Ctr. in Se. Pa. v. Morgan Props. Mgmt. Co.*, Civil Action No. 16-4677, 2018 WL 4489653, at *2 (E.D. Pa. Sept. 19, 2018); *see also In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 704 (M.D. Pa. 2009) ("Denials of motions to dismiss are not final orders, and a losing party may not ordinarily pursue an immediate appeal from them."). Under 28 U.S.C. § 1292(b), however, a district court may certify an interlocutory order for immediate appeal when it involves a controlling and uncertain legal issue:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). Section 1292(b) recognizes that in certain exceptional cases, "interlocutory appellate review" may "avoid injustice by quickly correcting a trial court's error," and "[i]t can simplify, or more appropriately direct, the future course of litigation," thereby reducing "the burdens of future proceedings." *Johnson v. Jones*, 515 U.S. 2151, 2154–55 (1995); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (explaining that the drafters of § 1292(b) gave examples of the types of cases which might be subject to immediate appeal, including "cases in which a long trial results from a pretrial order erroneously overruling a defense going to the right to maintain the action, . . . cases involving prolonged assessment of damages after determination

of liability, . . . cases where the disposition of motions for impleader might induce voluntary nonsuit or settlement, and . . . cases where venue is claimed to have been transferred without proper authority").

An issue is properly certified for interlocutory appeal under § 1292(b) when it: "(1) involve[s] a controlling question of law, (2) offer[s] substantial ground for difference of opinion as to its correctness, and (3) if immediately appealed [will] materially advance the ultimate termination of the litigation." *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021). Under the first element, "[a]n order involves a controlling question of law if either (1) an incorrect disposition would constitute reversible error if presented on final appeal or (2) the question is 'serious to the conduct of the litigation either practically or legally.'" *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. at 705 (quoting *Katz*, 496 F.2d at 755). Under the second, a "substantial ground for difference of opinion must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation." *Consumer Fin. Prot. Bureau*, 522 F. Supp. 3d at 113. Third, an interlocutory appeal materially advances the litigation where it eliminates "the need for trial," resolves "complex issues that complicate the trial," or removes "issues that would make discovery more costly or burdensome." *Id.* at 114. In addition to these three elements, some courts also consider "whether the issues in the action are of 'nationwide significance.'" *Id*.

"Even if all of the elements are satisfied, the decision to certify an interlocutory order for appeal under section 1292(b) 'rests within the sound discretion of the trial court.'" *Hall v. Wyeth, Inc.*, Civil Action No. 10-738, 2010 WL 4925258, at *1 (E.D. Pa. Dec. 2, 2010) (citation omitted); *accord Bradburn Parent Teacher Store, Inc. v. 3M*, No. Civ.A.02-7676, 2005 WL 1819969, at *2 (E.D. Pa. Aug. 2, 2005); *see also In re Chocolate Confectionary Antitrust Litig.*,

607 F. Supp. 2d at 704 ("[T]he court may decline to certify an order even if the parties have satisfied all elements enumerated in the statute."). And in exercising its discretion, "a district court should be mindful of the strong policy against piecemeal appeals." *Bradburn Parent Teacher Store, Inc.*, 2005 WL 1819969, at *2; *Sayles v. Allstate Ins. Co.*, Civil Action 3:16-CV-01534, 2017 WL 2985402, at *1 (M.D. Pa. July 13, 2017); *see also Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) (recognizing that Congress expected such requests to be granted "sparingly").

## II.    DISCUSSION

DraftKings moves to certify four questions for appeal:

1. Does DraftKings' use of MLB player images as alleged in the Complaint fall within the scope of the exception under 42 Pa. Cons. Stat. § 8316(e)(2)(ii) for "news report or news presentation having public interest" and the coextensive Pennsylvania common law exception? ("Issue 1")

2. As a matter of law, must a cause of action for unjust enrichment in a right of publicity case be dismissed where there is not a relationship between the parties? ("Issue 2")

3. Can a plaintiff purporting to represent a group of individuals circumvent the rules for class actions by bringing a claim under 42 Pa. Cons. Stat. § 8316(a) and Pennsylvania common law, when both provide only that an individual can bring a claim for the unauthorized use of her or his name or likeness? ("Issue 3")

4. Can a sublicensee, rather than the individual allegedly affected, bring a claim for unauthorized use of name or likeness under 42 Pa. Cons. Stat. § 8316(b)(4) and Pennsylvania common law? ("Issue 4")

(Doc. No. 60-1 at 7.)  The Court begins with Issues 3 and 4, which raise issues not previously decided, before addressing whether Issues 1 and 2 are appropriate for immediate appeal.

1. **Issue 3 and 4**

Certification is not appropriate as to Issues 3 and 4 because neither issue was adequately raised in DraftKings's briefing on the motion to dismiss or resolved by the March 14, 2025 Memorandum.

Beginning with Issue 3, DraftKings concedes that the March 14, 2025 Memorandum "did not squarely address the propriety of MLBPI's suing under a group licensing theory," nor did it address the "fact that the Statute and common law do not recognize suits based on group rights." (Doc. No. 60-1 at 15; *see also* H'rg. Tr. at 52:6–53:20 ("But what we did not address specifically and what needs to be addressed, or we can infer that you addressed it, is this question of whether the claim can be based on group licensing.").)  It argues that the Court failed to rule on these issues even though DraftKings raised them in its reply brief.  (Doc. No. 60-1 at 15 (referencing pages 8–9 of its reply brief).)  If, as DraftKings suggests, the Court failed to address an issue raised in DraftKings's briefing, reconsideration, not interlocutory appeal, would be the appropriate course.  *See Katz*, 469 at 763 ("We cannot exercise appellate jurisdiction over an issue not yet decided in the district court.").  But here, DraftKings *did not* adequately raise the propriety of group licensing as an issue in its briefing on the motion to dismiss.

In its initial briefing, DraftKings made two related, though distinct, arguments: (1) DraftKings argued that MLBPI failed to identify the "natural persons" on whose behalf it was bringing its statutory and common law claims (Doc. No. 36-1 at 27–28), and (2) it argued that MLBPI failed to allege that it was authorized to bring its statutory claim because the Complaint "merely alleges that each active player has licensed to [MLB Player's Association ("MLBPA")] (not a plaintiff in this case) the right to license and sublicense the players' NIL," without any "allegation that any natural person has licensed that right *to MLBPI*" (*id.* at 30–31).  DraftKings reiterated these arguments in its reply brief, while also asserting for the first time that MLBPI's

5

claims fail because "MLBPI does not cite a single case to support any 'collective' or 'group' right of publicity under either common law or the Statute." (Doc. No. 45 at 12–13.) But DraftKings did not elaborate on this issue or otherwise provide legal support for this separate assertion, which was, again, made in the context of DraftKings's broader argument that MLBPI was required to plead "the identity of the 'natural person[s]' whose rights it seeks to vindicate" and to show that MLBPI was authorized to assert those rights. (*Id.*)

In its current briefing, DraftKings tries to rewrite history and say it has consistently argued that "neither the Statute nor common law permit right of publicity suits based on a group licensing right." (Doc. No. 60-1 at 16.) But even now, its argument is hard to pin down. Although framed at times as an issue related to the scope of permissible statutory and common law claims, other times DraftKings argues that MLBPI is trying to "circumvent the rules for class actions" (*id.*), an issue it cannot seriously contend that it raised before now (*see* Hr'g Tr. at 7:3–10 (defense counsel conceding that she is "not sure if we mentioned the rules for class action" in the briefing on the motion to dismiss)). Because DraftKings did not adequately raise the issue below, and the Court did not rule on it in the March 14, 2025 Memorandum, immediate appeal is not appropriate. *See, e.g.*, *Rodriguez v. Procter & Gamble Co.*, 499 F. Supp. 3d 1202, 1209 (S.D. Fla. Nov. 6, 2020) ("[B]ecause courts have consistently rejected attempts to raise new arguments in a motion for interlocutory appeal, P&G's new arguments will not be considered at this juncture."); *In re Bank of Am. Corp. Secs., Derivative, & Emp'ee Retirement Income Sec. Act (ERISA) Litig. ("In re Bank of Am.")*, Master File No. 09 MD 2058(PKC), 2010 WL 4237304, at *3 (S.D.N.Y. Oct. 8, 2010) ("Section 1292(b) is not a vehicle for raising new arguments on appeal."); *see also, e.g.*, *Katz*, 469 F.2d at 763 (finding no appellate jurisdiction over an issue not addressed by the district court); *cf. Fed. Trade Comm. v. Surescripts, LLC*,

Civil Action No. 19-1080 (JDB), 2020 WL 2571627, at *5 (D.D.C. May 21, 2020) ("Inserting new, let alone previously disavowed, arguments into a § 1292(b) motion is a dubious practice at best, because it undermines the settled principle that courts of appeals should not consider arguments that parties failed to make below, as numerous courts have recognized." (cleaned up) (collecting cases)).

Issue 4, like Issue 3, was also not adequately raised in DraftKings's briefing on the motion to dismiss. DraftKings argues in its current briefing that "a corporation (like MLBPI) that purportedly has been assigned a right from non-natural person ([the Players' Association])" is foreclosed from bringing suit because, as relevant here, § 8316 extends standing only to a "natural person[ ]" and a "corporation authorized in writing *by such natural person to license* the commercial or advertising purposes of the person's name or likeness." (Doc. No. 60-1 at 18–19 (quoting 42 Pa. Cons. Stat. § 8316(b)(1)–(4)) (alterations adopted).) In other words, DraftKings argues that the statute and common law foreclose claims by sublicensees as a matter of law.

During oral argument on the current motion, DraftKings asserted that it previously raised this argument in its initial briefing on the motion to dismiss. (Hr'g Tr. at 6:1–11 ("This was argued in our opening motion to dismiss at page 7 and 24 to 25 . . . [a]nd then we again discussed it page 10 of our reply.").) But a review of that brief shows that DraftKings initially argued only that MLBPI failed to allege *facts* to show that MLBPI, as opposed to the Players' Association, had authority to assert the players' NIL claims. (*See* Doc. No. 36-1 at 13–14 ("The Complaint alleges that MLBPI is a corporate subsidiary of MLBPA, and draws the conclusion, *unsupported by factual allegations*, that the players' assignment to MLBPA, 'in turn,' confers rights on MLBPI." (emphasis added)); *id.* at 30 ("The Complaint *Fails to Adequately Allege* That MLBPI

7

Is Authorized to Bring a Claim (Count I)." (emphasis added))[2]; *id.* at 30–31 ("It is thus not clear *from the face of the Complaint* . . . that MLBPI is authorized under the Statute to bring a claim." (emphasis added)))[3]; *see also In re Bank of Am.*, 2010 WL 4237304, at *3 (denying certification where the defendant's underlying briefing "focused on the pleading of a state-of-mind requirement" under "the '33 Act," but their motion for certification raised a "new argument" about "which representations plausibly constitute a statement of fact under the '33 Act" (citations omitted)).

In its reply brief on the motion to dismiss, DraftKings built on this argument, asserting that MLBPI conceded "no natural person has authorized it in writing to license his name or likeness. Rather, MLB players have given a license to MLBPA, and MLBPA—not a natural person—purportedly has assigned the players' rights to MLBPI." (Doc. No. 45 at 14.)[4] This argument appears more closely in line with the textual arguments DraftKings makes in its current briefing. (*Compare id.* (arguing that this type of assignment "is not sufficient to authorize MLBPI to bring a claim under the Statute's unambiguous language"), *with* Doc. No. 60-1 at 18 (arguing that the text of § 8316 does not support the "chain of assignment" involved in this case), *and* Hr'g Tr. at 5:16–17 ("[T]he issue here is the assignment down the chain and the sublicensing.").) But notably, DraftKings did not state in this portion of its reply brief—which consisted of three sentences—that it was raising a new, purely legal question, nor did it cite any case law in support of its new position. (*See* Doc. No. 45 at 14; Hr'g Tr. at 11:18–21 (conceding

---

[2] As this quote shows, MLBPI's argument at the motion to dismiss stage was limited to MLBPI's statutory claim (Count I) and was not made in connection with the common law claim (Count II); however, now it seeks certification of this issue as to both counts.

[3] The Court has adopted the pagination provided by the CM/ECF system. Here, pages 13–14 and 30–31 of Doc. No. 36-1 as assigned by CM/ECF correlate with opening brief pages 7–8 and 24–25.

[4] Page 14 of Doc. No. 45 as assigned by CM/ECF correlates with reply brief page 10.

8

that DraftKings "did not cite any cases specifically saying that there are—that group licensing is not allowed" but claiming this failure was because the issue "has not been addressed").) This lack of support is particularly telling given that DraftKings's proposed interpretation would require the Court to find that the Pennsylvania legislature intended to foreclose all sublicensing of NIL rights when it passed § 8316. The Court reasonably did not view DraftKings to be raising that drastic position in a single paragraph of a reply brief that lacked legal support and a thorough discussion of the issue.[5] Instead, the Court interpreted this portion of the reply brief as a continuation of DraftKings's initial argument that MLBPI failed to *allege sufficient facts* to show it was authorized to bring a claim.

Based on that interpretation, the Court found MLBPI's allegations sufficient to suggest the players' NIL rights had been properly assigned to it through a sublicensing agreement with the Players' Association. Although this finding necessarily assumed that the statute and common

---

[5] At oral argument on the motion for certification, DraftKings's counsel argued that it "makes good sense from a policy perspective" to find § 8316 forecloses sublicensing of NIL rights as a matter of law, because "[w]hen a natural person assigns the rights to a corporation, they are still in control of it, they know who is in control of the rights. And so it makes sense that public policy would not support that then corporations can go and do whatever they want and give those rights to whoever they want." (Hr'g. Tr. at 14:15–23; *see also id.* at 54:3–10.) But DraftKings's suggested reading of § 8316 would restrict freedom of contract, a result at odds with the accepted proposition that "freedom of contract is the general rule and restraint the exception." *Advance-Rumely Thresher Co v. Jackson*, 287 U.S. 283, 288 (1932); *see also, e.g.*, *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 219 (3d Cir. 2022) ("Pennsylvania affords parties broad latitude in fashioning their agreements."); *Karkaria v. Karkaria*, 592 A.2d 64, 70 (Pa. Super. Ct. 1991) (recognizing the "deferential attitude on the part of the legislature towards the parties' ordering of their affairs by agreement and a reluctance to interfere with the parties' freedom of contract"). DraftKings's interpretation seems to ignore that, consistent with the freedom of contract, an individual wishing to "know who is in control of the[ir NIL] rights" could choose to limit or foreclose sublicensing when they initially assign those rights. And adopting DraftKings's reading of § 8316 would inevitably mean invalidation of any contractual provision authorizing sublicensing of NIL rights, a result which seems contrary to Pennsylvania precedent. *See Degliomini v. ESM Prods., Inc.*, 253 A.3d 226, 238 (Pa. 2021) ("An otherwise valid contract will not be voided in favor of a vague public policy goal; rather this Court requires that to support such a heavy-handed result, the alleged public policy must be . . . ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interest. There must be found *definite* indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. Only *dominant public policy* would justify such action." (emphases added)).

law contemplate sublicensing, that legal question was not properly before the Court, and our ruling cannot be read as definitively holding one way or the other on the issue. And because the Court did not rule on that legal issue (even assuming DraftKings properly raised it) immediate appeal is also inappropriate as to Issue 4. *See Katz*, 469 F.2d at 763 ("We cannot exercise appellate jurisdiction over an issue not yet decided in the district court."); Wright, Miller, et al., *Federal Practice and Procedure*, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ("If there is a district-court order and interlocutory appeal is allowed, the scope of the appeal does not extend to issues not yet decided by the district court.").

For those reasons, certification is denied as to Issues 3 and 4.

### 2.  **Issues 1 and 2**

Issues 1 and 2 are a closer call. In Issue 1, DraftKings challenges the Court's ruling on the scope of the statutory and common law exceptions for "news report or news presentation having public interest" (the "Public Interest Exceptions"). Previously, the Court rejected DraftKings's argument that the Public Interest Exceptions should be interpreted coextensive with other states' exceptions for "newsworthy" information. DraftKings argues that this issue should be certified for immediate appeal because the scope of the Public Interest Exceptions is an issue of first impression and if the Court's ruling is reversed, it "would be dispositive of Counts I and II." (Doc. No. 60-1 at 12–13.)

Even assuming that this issue involves a "controlling question of law," on which there may be "substantial ground for difference of opinion," the Court does not agree that reversal on appeal is likely to result in disposition of Counts I and II or otherwise "materially advance[ ] the ultimate termination of the litigation." *Consumer Fin. Prot. Bureau*, 522 F. Supp. 3d at 114 ("[A] § 1292(b) certification materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates:  (1) the need for trial; (2) complex issues that would

10

complicate the trial; or (3) issues that would make discovery more costly or burdensome."); *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d at 707 ("The court must evaluate whether an appeal could eliminate the need for a trial, simplify a case by foreclosing complex issues, or enable the parties to complete discovery more quickly or at less expense.").

As this Court explained in the March 14, 2025 Memorandum, the Complaint includes numerous examples of how DraftKings has used player NILs across its platforms, and "it is premature to hold as a matter of law that" all of those uses—many of which are included in the Complaint as *examples*—are "news reports" such that they fall within the scope of the Public Interest Exceptions. In other words, even if the Third Circuit adopted DraftKings's interpretation of the Public Interest Exceptions, it remains premature to rule on the *factual question* of whether those uses are "newsworthy."[6] (Hr'g Tr. at 21:4–7 ("The Court: You think that's a legal question, a question of law whether odds is news? Ms. Bannigan: That may be a factual question, Your Honor.").) And as such, reversal will not "lead to dismissal with prejudice" as DraftKings contends. (Doc. No. 60-1 at 13.) Neither will it alter the cost or burden of discovery that the parties will need to conduct, because either way, the parties will exchange discovery about the ways in which DraftKings uses player NILs on its sportsbook platforms and

---

[6] For this reason, the Court also questions whether DraftKings has satisfied the first element for certification, i.e., that the issue certified involves a controlling question of law. Although resolution of Counts I and II turns on the scope of the Public Interest Exceptions (a legal question), it also requires application of those exceptions to the facts (a factual question), which are not adequately developed at this stage of the litigation. *See Fair Housing Rights Ctr.*, 2018 WL 4489653, at *3 ("On a legal level, 'certification to appeal an interlocutory order is inappropriate when the underlying order involves mixed questions of law and fact because Section 1292(b) was not designed to secure appellate review of factual matters.'" (citation omitted and alterations adopted); *Johnson v. PG Pub'g Co.*, 2:20-cv-885-NR, 2021 WL 4171420, at *2 (W.D. Pa. Sept. 14, 2021) ("A court's order does not include a requisite controlling question of law, however, when the dispute turns on the court's application and interpretation of the facts."); *see also In re JRV Grp. USA L.P.*, Case No. 19-11095 (KBO), 2022 WL 3646288, at *6 (D. Del. Aug. 24, 2022) ("A proper interlocutory appeal 'must concern a controlling question of law. A pure question of law is something the court of appeals could decide quickly and cleanly without having to study the record.'" (citation omitted)).

social media accounts.⁷ *See Piazza v. Major League Baseball*, 836 F. Supp. 269, 272 (E.D. Pa. 1993) ("[I]f the Court of Appeals were to rule that the antitrust exemption extended beyond the reserve clause, but that *a record would have to be developed* before determining whether the actions relating to ownership and relocation constitute the 'business of baseball,' then discovery would still be necessary and perhaps trial, with another appeal arising from any ruling relating to the 'business of baseball.' Again, neither time nor money would be saved."); *see also Fair Housing Rights Ctr.*, 2018 WL 4489653, at *6 ("The importance of the factual circumstances surrounding the issues in this case supports the necessity of developing a factual record at trial so that any future appeal would be able to answer these FHAA questions armed with all of the necessary information."); *cf. Consumer Fin. Prot. Bureau*, 522 F. Supp. 3d at 117 ("[S]hould the Third Circuit Court of Appeals reverse this Court's application of the doctrine of equitable tolling, this case would be subject to immediate dismissal. Navient is thus correct in asserting that the need for any further proceedings, including trial, would be eliminated in such a situation.").

Accordingly, although a close call, the Court rejects the notion that the potential for "clarity as to the outer bounds of the 'public interest' exception" (Doc. No. 62 at 12) sufficiently overcomes the concerns of confusion and delay caused by protracted, piecemeal litigation. *See Piazza*, 836 F. Supp. at 272–73 (denying certification and noting that "avoiding piecemeal appeals will permit the Court of Appeals to have the entire controversy presented to it at one time, on a fully developed record from which it can make a final determination of the issues in

---

⁷ For this reason, the Court also questions whether the Third Circuit would accept the issue for immediate appeal even if certified by this Court. *See Katz*, 496 F.2d at 754 (recognizing that the appellate court may deny permission to appeal "based upon a different assessment than that of the district court as to any of the three criteria," as well as "for entirely unrelated reasons such as . . . the desire to have a full record before considering the disputed legal issue").

12

the case"); *Johnson*, 2021 WL 4171420, at *3 ("Certifying the case for appeal only to have it remanded by the Third Circuit for further factual development [would] not materially advance this litigation" and defendant is "better served raising its arguments at the summary-judgment stage, on a developed factual record."); *cf. Consumer Fin. Prot. Bureau*, 522 F. Supp. 3d at 116 ("[B]ecause the purely legal question certified to the Third Circuit would either lead to dismissal of the action in its entirety or would allow the entire case to go forward, certification of the Court's order would not run afoul of the strong policy established by federal law against piecemeal appeals.").

For similar reasons, Issue 2 is also not appropriate for immediate appeal. Again, even assuming that Issue 2 involves a "controlling question of law," on which there may be "substantial ground for difference of opinion," DraftKings has not shown that immediate appeal would materially advance the litigation. Issue 2 affects only the unjust enrichment claim (Count IV), meaning that even if the Third Circuit ruled in DraftKings's favor, reversed this Court's prior holding, and dismissed Count IV in its entirety, Counts I and II would remain and proceed with discovery, dispositive motions, and (if necessary) trial. The scope of discovery is virtually the same for all three counts (*see* Hr'g Tr. at 45:16–46:4 (Plaintiffs' counsel listing overlapping questions for discovery)), so dismissal of one would not substantially alter DraftKings's discovery burden or otherwise materially advance the litigation. *See Piazza*, 836 F. Supp. 269, 272–73 (denying certification where "several claims may proceed to trial regardless of the disposition" of the claims sought to be certified, such that an appeal "would create the potential for chaotic litigation"). Again, the Court does not find that early clarification on this issue sufficiently outweighs the concerns of confusion and delay caused by piecemeal litigation.

Accordingly, the Court declines to certify Issues 1 and 2 for immediate appeal.

### III.  CONCLUSION

DraftKings's motion is denied.  An appropriate order follows.